IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JEROME ANDERSON,

    Plaintiff,

v.

NEW SENIOR INVESTMENT GROUP INC.,
ROBERT F. SAVAGE, SUSAN GIVENS,
NORMAN K. JENKINS, MICHAEL D.
MALONE, DAVID H. MILNER, FRANCES
ALDRICH SEVILLA-SACASA, and CASSIA
VAN DER HOOF HOLSTEIN,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Jerome Anderson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.    Plaintiff brings this action against New Senior Investment Group Inc. ("New Senior" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Ventas, Inc. ("Ventas")

through Ventas's subsidiary Cadence Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2. On June 28, 2021, New Senior and Ventas issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated June 28, 2021, to sell New Senior to Ventas (the "Merger Agreement"). Under the terms of the Merger Agreement, each New Senior stockholder will be entitled to receive 0.1561 of a newly issued share of Ventas common stock for each New Senior share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.3 billion.

3. On August 11, 2021, New Senior filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that New Senior stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) the Company's and Ventas's financial projections and the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); (ii) Morgan Stanley's potential conflicts of interest; and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, New Senior's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. New Senior owns and maintains five of its senior housing properties in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of New Senior common stock.

9. Defendant New Senior is a Delaware corporation with its principal executive offices located at 55 West 46th Street, Suite 2204, New York, New York 10036. New Senior is a publicly-traded real estate investment trust ("REIT") with a diversified portfolio of senior housing properties. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "SNR."

10.     Defendant Robert F. Savage ("Savage") has been Chairman of the Board since January 2019, and a director of the Company since February 2016.

11.     Defendant Susan Givens ("Givens") has been President, Chief Executive Officer ("CEO"), and a director of the Company since October 2014.

12.     Defendant Norman K. Jenkins ("Jenkins") has been a director of the Company since November 2020.

13.     Defendant Michael D. Malone ("Malone") has been a director of the Company since October 2014.

14.     Defendant David H. Milner ("Milner") has been a director of the Company since March 2018.

15.     Defendant Frances Aldrich Sevilla-Sacasa ("Sevilla-Sacasa") has been a director of the Company since January 2021.

16.     Defendant Cassia Van Der Hoof Holstein ("Holstein") has been a director of the Company since October 2014.

17.     Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18.     Ventas is a Delaware corporation with its principal executive offices located at 353 N. Clark Street, Suite 3300, Chicago, Illinois 60654.  Ventas is a REIT operating at the intersection of healthcare and real estate.  Ventas holds a highly diversified portfolio of senior housing, life science, research and innovation, and healthcare properties located throughout the United States, Canada and the United Kingdom.  As of June 30, 2021, Ventas owned or had investments in approximately 1,200 properties, consisting of senior housing communities, medical office

buildings, life science, research and innovation centers, inpatient rehabilitation facilities and long-term acute care facilities, and health systems. Ventas's common stock is traded on the New York Stock Exchange under the ticker symbol "VTR."

19. Merger Sub is a Delaware limited liability company and subsidiary of Ventas.

<b>SUBSTANTIVE ALLEGATIONS</b>

**Company Background**

20. New Senior is an internally managed REIT focused solely on senior housing properties, which was spun off from Drive Shack Inc., formerly Newcastle Investment Corp. ("Drive Shack"), in November 2014. The Company holds a geographically diversified portfolio of primarily private pay senior housing properties located across the United States. As of December 31, 2020, New Senior's portfolio was comprised of 103 senior housing properties across 36 states, which positions it as one of the largest owners of senior housing properties in the United States.

21. The majority of the Company's portfolio is managed by some of the largest and most experienced operators in the United States. Currently, New Senior's managed properties are managed by affiliates or subsidiaries of each of Holiday Retirement ("Holiday"), Merrill Gardens LLC, and Grace Management, Inc.. The Company also owns one continuing care retirement community and leases this property under a triple net lease agreement to Watermark Retirement Communities, Inc. ("Watermark"), a healthcare operating company. Holiday is among the top three largest senior housing operators in the United States.

22. The Company is organized and operates as a single reportable segment, Senior Housing Properties, having changed its structure in 2020 from two reportable segments: Managed Independent Living Properties, and Other Properties.

**The Proposed Transaction**

23.     On June 28, 2021, New Senior and Ventas issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> CHICAGO & NEW YORK--Ventas, Inc. (NYSE: VTR) ("Ventas") and New Senior Investment Group Inc. (NYSE: SNR) ("New Senior") today announced that they have entered into a definitive merger agreement pursuant to which Ventas will acquire New Senior in an all-stock transaction (the "Transaction"), valued at approximately $2.3 billion, including $1.5 billion of New Senior debt.
>
> New Senior has a high-quality, geographically diversified portfolio of 103 private pay senior living communities, including 102 independent living communities, totaling 12,404 units and located across 36 states in the United States.
>
> Under the terms of the agreement, New Senior shareholders will receive 0.1561 shares of newly issued Ventas stock per share of New Senior common stock. Based on the closing price of Ventas common stock on June 25, 2021, this represents approximately $9.10 per New Senior share, a 31% equity premium based on New Senior's 30-day trading average, and a 10% premium on New Senior's total enterprise value.
>
> The Transaction valuation is expected to represent approximately a 6% capitalization rate on expected New Senior 2022 Net Operating Income ("NOI") and is expected to be approximately $0.09 to $0.11 accretive to Ventas's normalized funds from operations per share on a full year basis.
>
> "Building on the strong momentum we are experiencing in our business, we are delighted to announce this strategic and accretive acquisition with New Senior that expands Ventas's position in senior housing at an important inflection point in the cycle as the senior housing industry rebounds," said Debra A. Cafaro, Ventas Chairman and CEO.
>
> "The transaction provides Ventas shareholders with an attractive valuation and accretion, and further positions us to win the recovery. It continues Ventas's longstanding track record of capital allocation excellence, builds on our deep experience with the independent living product and leading operators Atria and Holiday, and is a testament to the continued dedication and expertise of our outstanding team."
>
> J. Justin Hutchens, Ventas's EVP, Senior Housing, added, "I am excited to include the New Senior assets in our portfolio. These independent living communities represent a strong fit with our existing portfolio, as we enhance our senior housing business to capture upside from the industry recovery."

"New Senior's independent living communities are located in advantaged markets, enjoy positive supply demand fundamentals, appeal to a large and growing middle market senior demographic, have demonstrated superior financial performance and are rapidly growing occupancy and leads."

"We are pleased to have reached this agreement with Ventas, which provides immediate, full and fair value to our shareholders," said Susan L. Givens, President and Chief Executive Officer of New Senior. "It was a pleasure to work with the focused and knowledgeable Ventas team. Our Board and management team have concluded that combining with Ventas will provide all of our stakeholders the opportunity to benefit from the upside potential of a combined company that has enhanced size, scale, relationships and financial strength."

**Strategic and Financial Benefits of the Transaction**

- **Enhances Ventas's senior housing position at a cyclical inflection point in advance of the expected powerful senior housing industry recovery**
    o The Transaction significantly expands Ventas's participation in the robust senior housing recovery through its Senior Housing Operating ("SHOP") portfolio. With resilient demand from a rapidly growing population of seniors, new construction at cyclical lows, and the trough of the COVID-19 pandemic behind us, independent living senior housing is poised for exciting growth.
    o The accelerating 80+ population is expected to grow by over 2 million individuals through 2025 and is expected to increase from 13 million in 2020 to nearly 20 million by 2030. Senior housing new construction trends are favorable, with new construction starts at the lowest level since 2011.

- **Adds a superior quality, high performing portfolio to Ventas that is well located in advantaged markets**
    o New Senior has driven strong historic performance. In the early stages of the post-pandemic recovery, the portfolio has seen positive trends with leads and move-ins in the second quarter accelerating through June and expected to exceed the comparable pre-pandemic period in 2019. New Senior "same-store" occupancy gains have accelerated in June and the 2Q21 "spot to spot" occupancy change is expected to be toward the high-end of the 2Q21 guidance range of +120bps to +150bps sequentially.
    o New Senior's communities are located in highly attractive sub-markets with compelling metrics, including advantaged median home values exceeding $300,000, median incomes exceeding $70,000, proximity to premier retail locations and limited deliveries of new supply expected in the next few years. The wealth metrics in these submarkets makes the communities' price point highly affordable and accessible.

7

- o The New Senior portfolio comprises well invested, purpose-built properties with attractive physical characteristics, including large, well-designed floorplans appealing to the independent living demographic. It has limited near term capital expenditure needs but provides opportunity for select investment in revenue enhancing projects.
- o The New Senior portfolio has highly favorable operating margins approximating 40% pre-pandemic that benefit from the independent living staffing model with minimal need for care and a resident length of stay of approximately three years.

- **Expands Ventas's exposure to independent living in the United States, catering to a large and growing middle market**
    - o Demographic and new supply trends in independent living support strong and accelerating positive net absorption over the intermediate term.
    - o Complementary to Ventas's high end major market senior housing portfolio, independent living expands the addressable market by appealing to the large and growing middle income senior population, which is expected to grow by 82% to 14 million by 2029, at which time the segment is expected to represent 43% of all seniors.

- **Builds on Ventas's Existing Relationships with Leading Operators; Adds New Operators**
    - o 65 independent living communities under terminable management contracts with longstanding Ventas manager Holiday Retirement ("Holiday").
        - 21 independent living communities under long term management contracts with longstanding Ventas leading operator Atria Senior Living ("Atria").
        - 16 independent living communities under management contracts with other senior housing managers including Grace Management, Merrill Gardens Senior Living, Hawthorn Senior Living and Watermark Retirement Communities.
    - o Ventas holds a 34% ownership stake in Atria, and Atria and Holiday recently agreed to combine as one entity. This Transaction will enable Ventas to benefit from the scale, technology, team and operating capabilities of both companies.

- **Attractive Valuation & Financial Returns**
    - o The Transaction valuation is expected to represent approximately a 6% capitalization rate on expected New Senior 2022 NOI; and approximately an 8% capitalization rate on estimated New Senior

8

- NOI over time, incorporating the attractive medium-term supply demand fundamentals in independent living.
  o The acquisition price implies a 20% to 30% discount to estimated replacement cost on a per unit basis.
  o Ventas expects to realize between $16 to $18 million in annualized corporate G&A synergies commencing in 2022.
  o The Transaction price represents a multiple of <12 times estimated 2022 New Senior normalized FFO per share including full synergies.
  o Ventas expects to make revenue generating capital investments for additional value add opportunities in select communities and markets.
  o Ventas expects to assume certain existing New Senior mortgage debt and fund the repayment of any debt not assumed through other capital sources.

**Pro Forma Portfolio Composition**

The Transaction increases Ventas's exposure to the powerful recovery in Senior Housing. Pro forma for the Transaction:

- Ventas's total Senior Housing portfolio concentration will increase from 44% to 48% of first quarter 2021 annualized adjusted NOI.
- Ventas's SHOP portfolio mix will increase from 26% to 31%.
- Ventas's SHOP portfolio independent living unit mix will increase from 48% to 58%.
- SHOP portfolio NOI generated in the United States will increase from 61% to 69%.

**Approvals, Timing and Dividends**

The Transaction is expected to close during the second half of 2021, subject to customary closing conditions, including approval by the common shareholders of New Senior. The Companies have agreed to synchronize the record and payment dates for their dividends, which are expected to remain at their current levels prior to the closing of the Transaction, subject to approval of their respective Boards of Directors, on the dates typically used by Ventas.

The Board of Directors of both companies have unanimously approved the Transaction.

**Advisors**

Centerview Partners LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Ventas. Morgan Stanley & Co. LLC is

9

serving as financial advisor and Cravath, Swaine & Moore LLP is acting as legal advisor to New Senior.

**Insiders' Interests in the Proposed Transaction**

24.  New Senior insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of New Senior.

25.  Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Ventas. Pursuant to the Merger Agreement, all outstanding Company options, restricted stock awards, time-based restricted stock units ("RSUs"), and performance-based RSUs, will vest and convert into the right to receive: (i) cash in the case of Company options, and (ii) the Merger Consideration in the case of restricted stock awards, time-based RSUs, and performance-based RSUs. The following table summarizes the value of equity awards held by Company insiders:

| Name | New Senior Stock Options (#) | Value ($) | New Senior Restricted Stock Awards and/or New Senior RSU Awards (time-based) (#)[1] | Value ($)[2] | New Senior RSU Awards (performance-based) (#)[3] | Value ($)[4] |
|---|---|---|---|---|---|---|
| **Directors** | | | | | | |
| Frances Aldrich Sevilla-Sacasa | — | — | 15,129 | $ 133,892 | — | — |
| Norman Jenkins | — | — | 15,129 | $ 133,892 | — | — |
| Michael Malone | — | — | 15,129 | $ 133,892 | — | — |
| David Milner | — | — | 15,129 | $ 133,892 | — | — |
| Robert Savage | — | — | 15,129 | $ 133,892 | — | — |
| Cassia van der Hoof Holstein | — | — | 15,129 | $ 133,892 | — | — |
| **Executive Officers** | | | | | | |
| Susan Givens | 666,666 | $3,716,663 | 390,542 | $3,653,507 | 2,050,114 | $19,212,816 |
| Bhairav Patel | 111,100 | $ 619,383 | 74,741 | $ 694,163 | 204,416 | $ 1,927,051 |
| Lori Marino | 104,166 | $ 338,019 | 57,851 | $ 534,829 | 239,297 | $ 2,226,161 |

26.     Moreover, if they are terminated in connection with the Proposed Transaction, New Senior's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites / Benefits ($)[3][4] | Total ($) |
|---|---|---|---|---|
| Susan Givens | $7,500,000 | $26,582,986 | $34,674 | $34,117,660 |
| Bhairav Patel | $1,925,000 | $ 3,240,597 | $34,674 | $ 5,200,271 |
| Lori Marino | $2,337,500 | $ 3,099,009 | $34,674 | $ 5,471,183 |

**The Proxy Statement Contains Material Misstatements and Omissions**

27.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to New Senior's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Ventas's financial projections and the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Morgan Stanley; (ii) Morgan Stanley's potential conflicts of interest; and (iii) the background of the Proposed Transaction. Accordingly, New Senior stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections and Morgan Stanley's Financial Analyses*

29.     The Proxy Statement omits material information regarding Company management's financial projections.

11

30. For example, the Proxy Statement fails to disclose each of the line items underlying the Company's (i) Total Cash Revenue; (ii) Cash NOI; (iii) Normalized Funds From Operations; and (iv) Adjusted Funds From Operations.

31. In addition, the Proxy Statement fails to disclose any financial projections for Ventas or, in the alternative, the details of "Ventas's Chief Financial Officer[']s] respon[se] to questions regarding Ventas's forecasted performance relative to analyst consensus forecasts, which Morgan Stanley reviewed with the New Senior Board" on or around June 23, 2021. Proxy Statement at 39.

32. The Proxy Statement also describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, New Senior's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to New Senior's stockholders.

33. With respect to Morgan Stanley's *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 9.7% to 11.7%; and (ii) quantification of the Company's terminal values.

34. With respect to Morgan Stanley's *Broker Price Targets Analysis for New Senior* and *Broker Price Targets Analysis for Ventas*, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

35. With respect to Morgan Stanley's *Broker Price NAV per Share Analysis for New Senior* and *Broker Price NAV per Share Analysis for Ventas*, the Proxy Statement fails to disclose the individual NAV per share estimates observed and the sources thereof.

36. The omission of this information renders the statements in the "Certain New Senior Forecasts" and "Opinion of New Senior's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest***

37. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Morgan Stanley.

38. The Proxy Statement sets forth that in connection with the Proposed Transaction "New Senior has agreed to pay Morgan Stanley . . . an additional discretionary fee of up to approximately $6 million, payable, if at all, at the New Senior Board's sole discretion on or before the closing." *Id.* at 52. The Proxy Statement fails, however, fails to disclose the agreed parameters for such additional discretionary fee, the criteria Morgan Stanley needs to satisfy to receive the additional fee, and whether the Company anticipates paying Morgan Stanley the additional fee.

39. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40. The omission of this information renders the statements in the "Opinion of New Senior's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41. The Proxy Statement omits material information regarding the background process leading to the Proposed Transaction.

13

42.     For example, the Proxy Statement fails to disclose whether the confidentiality agreement the Company entered into with the party identified in the Proxy Statement as "Party A" (*id.* at 34), or any other parties involved in the sale process, include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any interested party from submitting a topping bid for the Company.

43.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

44.     Any reasonable New Senior stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

45.     The Proxy Statement also fails to disclose the terms of all proposals, including the "non-binding proposals or other inquiries from various parties (directly or through their financial advisors) relating to acquisitions of or other strategic transactions involving New Senior" received by the Company during the process leading up to the Proposed Transaction. *Id*. at 32.

46.     The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of New Senior will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections for New Senior and Ventas, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley, potential conflicts of interest faced by Morgan Stanley, and the background of the Proposed

Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

54. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55. The Individual Defendants acted as controlling persons of New Senior within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of New Senior and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

16

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, New Senior's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 26, 2021                    Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

18